499 So.2d 385 (1986)
BOH BROS. CONSTRUCTION COMPANY, INC.
v.
CITY OF NEW ORLEANS.
No. CA-5146.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1986.
*386 Charles F. Seemann, Jr., Deutsch, Kerrigan & Stiles, New Orleans, for plaintiff-appellant.
Robin M. Giarrusso, Deputy City Atty., New Orleans, for defendant-appellee.
Robert L. Roland, Watson, Blanche, Wilson and Posner, Baton Rouge, for Associated General Contractors of Louisiana, Inc.
Before GULOTTA, LOBRANO and ARMSTRONG, JJ.
LOBRANO, Judge.
The sole issue of this appeal is whether the provisions of La.R.S. 38:2248 are applicable to public works contracts entered into by the City of New Orleans.
The pertinent facts are not in dispute. Boh Bros Construction Co. (Boh) as general contractor entered into several construction contracts with the City of New Orleans, eight of which exceed $500,000. Boh claims that the provisions of La.R.S. 38:2248, which require a retainage by the City of 5% of the contract price, is applicable; whereas, the City claims that its Ordinance No. 4201 M.C.S., which requires a 10% retainage, is applicable. The trial court ruled in favor of the City and Boh perfects this appeal.
La.R.S. 38:2248 was originally enacted by Acts 1954, No. 583, and later amended by Acts 1978, No. 470 and Acts 1979, No. 751. The statute presently reads as follows:
"No contracts for the construction, alteration, or repair of any public works executed in conformity with this Part shall provide that the state or any of its agencies, boards or subdivisions letting such a contract may withhold payment of more than ten per centum of the contract price on projects of less than five hundred thousand dollars, and five percentum of the contract price on projects of five hundred thousand dollars or more until the expiration of forty-five days after the recordation of formal acceptance of such work, or notice of default by the contractor or subcontractor. Such provision for withholding of payment shall in no way change or affect the liability of the letting agency or of the contractor, subcontractor, or their sureties."
Boh argues that the term "subdivision" as used in the statute refers to the political subdivisions of the state, i.e. parishes and municipalities. The City argues that the term is meant to include only those agencies, boards and subdivisions of the sovereign state itself. Since the City is a political subdivision of the state created in accordance with the provisions of its homerule charter, it has the authority to adopt the ordinance requiring a 10% retainage on its public works contracts, and that ordinance should be applicable.
Clearly, the state has the authority, under its general police powers to make R.S. 38:2248 applicable to local governing bodies. Equally clear is the fact that a home rule charter government possesses, in affairs of local concern, powers which, within its jurisdiction, are as broad as that of the State. Despite those broad powers, however, the police powers of the state cannot be abridged. La. Const. Art. VI, sec. 9(B). To that extent the authority of the local governments is limited by the constitution and the general laws of the State. See, Francis v. Morial, 455 So.2d 1168 (La. 1984). The only prohibition against state intrusion in local affairs is Article VI, sec. 6 which protects home rule governments from unwarrantable interference in their internal makeup and affairs.
The statute in question appears in Part III of Chapter 10 of Title 38. It is entitled "Claims of Materialmen and Laborers on Public Works". A review of the entirety of Part III indicates an intent on the part of the legislature for a uniform system of laws governing public works contracts, and the rights of contractors, laborers and materialmen in connection therewith. The initial legislation was enacted by Act 224 of *387 1918. Section one of that Act, which sets out the requisities of a contract with a public body contains the language "... the state or any state board or agency or any political subdivision of the state ..." (emphasis added). Sections 2, 3, 4, 5, and 6, all refer to actions of the "governing authority". La.R.S. 38:2248 was enacted in 1954. It contains very similar phraseology as the original 1918 act, however it excludes the adjective "political" in the phrase "state or any of its agencies, boards or subdivisions". Despite two subsequent amendments, that language remains the same.
It is basic to statutory construction that the meaning and intent to the law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter. Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1st Cir.1984). When the words of a law are dubious, confusing or susceptible to more than one definition, their meaning may be sought by examining the context within which the ambigious words, phrases and sentences may be compared in order to ascertain their true meaning. Keelen v. State Dept. of Culture, Recreation and Tourism, 463 So.2d 1287 (La.1985).
We are convinced that R.S. 38:2248 was intended to apply to all contracts for public works, including those with local governing bodies. The entire thrust of Part III of Chapter 10 is to provide uniformity with respect to the rights and obligations of the parties affected by a contract for public works. R.S. 38:2248 contains the language, "[n]o contract ... executed in conformity with this Part. ..." (emphasis added). That language obviously refers to the entirety of Part III and, we believe, evidences the legislative intent for uniformity in the law with respect to public works contracts. This is a legitimate exercise of the general police power of the state, and any local governing authority's ordinance to the contrary is an abridgement of that police power in violation of Article VI, sec. 9(B).
We therefore reverse the holding of the district court and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.